# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| **LAURA A. DAY, on behalf of herself and others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:20-cv-01120-RDB** |
| **PPE CASINO RESORTS MARYLAND, LLC d/b/a LIVE! CASINO & HOTEL,** | |
| **Defendant.** | |

<u>**CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT**</u>

This Class and Collective Action Settlement Agreement (the "Agreement") is made and entered into by and between Plaintiff Laura A. Day ("Named Plaintiff") and all members of the Settlement Class and Settlement Collective (defined below), on the one hand, and Defendant PPE Casino Resorts Maryland, LLC d/b/a Live! Casino & Hotel, on the other hand (collectively, the "Parties"), to resolve all claims and disputes which are the subject of the lawsuit filed by Named Plaintiff with the U.S. District Court for the District of Maryland, *Day v. PPE Casino Resorts Maryland, LLC d/b/a Live! Casino & Hotel*, No. 1:20-CV-01120-RDB (the "Litigation").

## <u>RECITALS</u>

WHEREAS, on April 30, 2020, Named Plaintiff filed the Complaint in this Litigation, on behalf of herself and others similarly situated, alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl., §§ 3-401, *et seq.* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab & Empl., §§ 3-501, *et seq.* ("MWPCL") by (1) failing to properly inform its tipped employees of the required tip credit provisions prior to paying them a sub-minimum direct cash wage; and (2) deducting costs associated with Maryland Gaming Licenses (defined below) from employees' pay which reduced its employees' compensation below the required minimum wage. *See* Dkt. 1 ("Complaint"), ¶¶ 1-5;

WHEREAS, Named Plaintiff has sought the recovery of, among other things, minimum wages, overtime wages, straight-time wages, liquidated damages, attorneys' fees, and costs;

WHEREAS, Defendant denies and continues to deny all of the allegations made by Named Plaintiff, and denies and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action alleged, or that any claims asserted by Named Plaintiff may proceed on a class or collective action basis. Nonetheless, without admitting or conceding any

arguments, issues, liability, or damages whatsoever, including that any claims alleged may proceed on a class or collective action basis, Defendant has agreed to settle the claims on the terms and conditions set forth in this Agreement to avoid the burden and expense of continuing to defend against the Litigation;

WHEREAS, Class Counsel (as defined below) has interviewed Named Plaintiff and other members of the Settlement Class and Settlement Collective and reviewed and analyzed documents and data produced by Defendant;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendant, and the impact of this Agreement on Named Plaintiff, the Settlement Class, and the Settlement Collective;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of litigation with respect to certain claims, including the possibility that any litigation might result in a recovery that is less favorable to the Settlement Class and Settlement Collective, and that would not occur for several years, or at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Settlement Class and Settlement Collective;

WHEREAS, the Parties recognize that the outcome in the Litigation is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time, and expense;

WHEREAS, the Parties desire to settle fully and finally the differences between them and have agreed to settle this case as to Named Plaintiff as well as all individuals comprising the Settlement Class and Settlement Collective, as defined below; and

WHEREAS, the Parties agree to undertake their best efforts, including all steps and efforts

that may become necessary by order of the Court, to effectuate the terms and purposes of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree, subject to approval of the Court, as follows:

### DEFINITIONS

1.      **"Agreement."** "Agreement" means this agreement, i.e., the Class and Collective Action Settlement Agreement, together with all of its attachments and exhibits, which the Parties understand and agree sets forth all material terms and conditions of the settlement between them, and which is subject to Court approval.  It is understood and agreed that the obligations of Defendant for payment under this Agreement are conditioned on, *inter alia*, the occurrence of the Effective Date.

2.      **"Class Counsel" or "Plaintiff's Counsel."** "Class Counsel" or "Plaintiff's Counsel" shall mean George A. Hanson and Alexander T. Ricke of Stueve Siegel Hanson LLP, Ryan L. McClelland and Michael J. Rahmberg of McClelland Law Firm, P.C., and Neil R. Lebowitz of Lebowitz Law Firm.

3.      **"Class Employees."** "Class Employees" means the combined group of individuals in the Tip Credit Class and Gaming License Class.

4.      **"Collective Employees."** "Collective Employees" means the combined group of individuals in the Tip Credit Collective and Gaming License Collective.

5.      **"Class Member" or "Settlement Class."** "Class Member" or "Settlement Class" means Named Plaintiff and all Class Employees who do not opt out of the Settlement by submitting

Opt Outs pursuant to Paragraph 67, and thus means all individuals who will become bound by the Released State Claims portion of the Judgment if the Effective Date occurs.

6.      **"Collective Member" or "Settlement Collective."**  "Collective Member" or "Settlement Collective" means Named Plaintiff and all Collective Employees who negotiate their FLSA Settlement Check and thus become bound by the Released Federal Claims portion of the Judgment if the Effective Date occurs.

7.      **"Class Representative."** "Class Representative" means Named Plaintiff Laura A. Day.

8.      **"Complaint."** "Complaint" means the Class and Collective Action Complaint dated April 30, 2020, filed by Named Plaintiff in the Litigation. *See* Dkt. 1.

9.      **"Counsel for Defendant" or "Defense Counsel."** "Counsel for Defendant" or "Defense Counsel" shall mean Paul DeCamp and Maxine Adams of Epstein, Becker & Green, P.C., and J. Michael McGuire of Shawe Rosenthal LLP.

10.     **"Court."** "Court" refers to the Court having jurisdiction over the Litigation, at any stage; presently the U.S. District Court for the District of Maryland.

11.     **"Defendant."** "Defendant" shall mean the Defendant in the Litigation, PPE Casino Resorts Maryland, LLC d/b/a Live! Casino & Hotel.

12.     **"Effective Date."** "Effective Date" means the date on which the Judgment becomes a Final Judgment.

13.     **"Employer Payroll Taxes."** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation.

14. **"Final Approval."** "Final Approval" means the date the Court enters an Order finally approving the Settlement and dismissing the Litigation against Defendant with prejudice, while still retaining continuing jurisdiction over the administration of the settlement.

15. **"Final Approval Order."** "Final Approval Order" means an order that grants final approval of the Agreement; grants final certification of the Settlement Class and Settlement Collective for settlement purposes only; authorizes payments to Named Plaintiff, the Settlement Class, and the Settlement Collective as provided in this Agreement; and fully and finally extinguishes (i) the Released State Claims of the Settlement Class and (ii) the Released Federal Claims of the Settlement Collective upon Collective Members' negotiation of their FLSA Settlement Checks, as set forth herein. The Parties shall submit a draft order, entitled "Order Granting Final Approval of Class Settlement," substantially in the form attached hereto as Exhibit E, for the Court's review and approval.

16. **"Final Judgment."** "Final Judgment" means the latest of: (i) the final affirmance on an appeal of the Judgment, or the expiration of time for a petition for a writ of certiorari to review the Judgment and, if certiorari is granted, the final affirmance of the Judgment following review pursuant to that grant; (ii) the final dismissal with prejudice of the last pending appeal from the Judgment or the final dismissal of any proceeding on certiorari to review the Judgment; or (iii) if no appeal is filed, the expiration of the time for the filing or noticing of any form of valid appeal from the Judgment.

17. **"Final Settlement Approval Hearing."** "Final Settlement Approval Hearing" means a hearing set by the Court to take place at least thirty (30) days after the Opt Out Response Deadline, for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Agreement terms and associated settlement pursuant to class action procedures and requirements;

(ii) approving Class Counsel's attorneys' fees and costs; (iii) approving the payment of the Named Plaintiff Service Payment; and (iv) entering Judgment.

18.     **"Final Settlement Notice."** "Final Settlement Notice" means the Official Court Notice of Settlement to be sent to Class Members and Collective Members after the Court grants Final Approval of the Agreement, substantially in the form attached to this Agreement as Exhibit B.

19.     **"FLSA Settlement Checks."** "FLSA Settlement Checks" means the checks issued to Collective Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement in exchange for becoming bound by the Released Federal Claims portion of the Judgment if the Effective Date occurs.  Together, the Rule 23 Settlement Checks and FLSA Settlement Checks will be referred to as "Settlement Checks."

20.     **"Gaming License."**  "Gaming License" means a license issued by the Maryland State Lottery & Gaming Control Agency (the "Agency") to a person or entity to perform an occupation which the Agency has identified as requiring a gaming license under Maryland law.

21.     **"Gaming License Class."** "Gaming License Class" means any current or former hourly employees of Defendant who, from April 30, 2017 through March 18, 2021, (i) received a base hourly wage (not including tips) that was equal to or less than the then-applicable Maryland minimum wage, and (ii) had fees associated with a gaming license deducted from their pay during that timeframe.

22.     **"Gaming License Collective."** "Gaming License Collective" means any current or former hourly employees of Defendant who, from April 30, 2017 through March 18, 2021, (i) received a base hourly wage (not including tips) that was equal to or less than $7.25 per hour, and (ii) had fees associated with a gaming license deducted from their pay during that timeframe.

23.    **"Judgment."** "Judgment" means the judgment to be rendered by the Court pursuant to this Agreement.

24.    **"Maximum Settlement Fund."** "Maximum Settlement Fund" means $3,050,000, which is the maximum amount that Defendant has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Class Members and Collective Members; the Settlement Administration Costs; any Court-approved Service Payment; and the Reserve Fund.  Defendant will not be required to pay under this Agreement any more than the gross total of $3,050.000, except for the Employer Payroll Taxes, which Defendant shall pay independent of and in addition to the Maximum Settlement Fund.

25.    **"Named Plaintiff."** "Named Plaintiff" means Laura A. Day.

26.    **"Net Settlement Amount."** "Net Settlement Amount" means the Maximum Settlement Fund less Class Counsel's attorneys' fees and costs, the Service Payment, the Settlement Administration Costs, and the Reserve Fund.

27.    **"Notice Materials."** "Notice Materials" means the Proposed Settlement Notice, which includes the Election to Opt-Out of Settlement and Class Action Form (Form A) and the Change of Name and/or Address Information Form (Form B); and the Final Settlement Notice.

28.    **"Opt Out" or "Opt Outs."** "Opt Out" or "Opt Outs" means written and signed requests by Class Employees to be excluded from the Settlement Class, which are to be submitted on the form entitled "Election to Opt-Out of Settlement and Class Action Form," in the manner and within the time set forth in the Proposed Settlement Notice.

29.    **"Opt Out Response Deadline."** "Opt Out Response Deadline" means the later of the date forty-five (45) days from the date the Settlement Administrator first mails the Proposed

Settlement Notice to Class Employees, or thirty (30) days from the date the Settlement Administrator mails the Proposed Settlement Notice to a Class Employee's additional address, provided that under no circumstances will the Opt Out Response Deadline be more than seventy-five (75) days from date the Settlement Administrator first mails the Proposed Settlement Notice to Class Employees.

30.    **"Participating Collective Member."** "Participating Collective Member" means any Collective Member who negotiates his or her FLSA Settlement Check and thus becomes bound by the Released Federal Claims portions of the Judgment.

31.    **"Participation Deadline."** "Participation Deadline" means the date one hundred and twenty (120) days from the date the Settlement Administrator mails the FLSA Settlement Checks to the Collective Members.

32.    **"Parties**." "Parties" shall refer to the Named Plaintiff and Defendant.

33.    **"Preliminary Approval."** "Preliminary Approval" means the date on which the Court preliminarily approves the terms of the Parties' Agreement and certifies a class and collective action for settlement purposes only, as provided in Paragraphs 21-22 and 45-47.

34.    **"Preliminary Approval Order."** "Preliminary Approval Order" means an order to be executed and filed by the Court preliminarily approving the terms contained in this Agreement and certifying a class and collective action for settlement purposes only as provided in Paragraphs 21-22 and 45-47.  The Parties shall submit a draft order, entitled "Order Granting Preliminary Approval of Class Action Settlement," substantially in the form attached hereto as Exhibit C, for the Court's review and approval.

35.    **"Proposed Settlement Notice."** "Proposed Settlement Notice" means the Notice Regarding Proposed Settlement of Class and Collective Action to be sent to Class Employees and

Collective Employees after the Court grants Preliminary Approval of the Agreement, substantially in the form attached to this Agreement as Exhibit A.

36.    **"Released State Claims."** "Released State Claims" means any and all state wage and hour claims that were or could have been asserted based on the facts alleged in the Complaint, or otherwise relating to tips, tip credit, notice of tip credit, or gaming licenses, including, but not limited to, those brought under the MWHL and MWPCL or common law.  The Released State Claims include interest and liquidated or punitive damages based on said claims, and are intended to include all claims described or identified herein through the date of Preliminary Approval.

37.    **"Released Federal Claims."** "Released Federal Claims" means any and all federal wage and hour claims that were or could have been asserted based on the facts alleged in the Complaint, or otherwise relating to tips, tip credit, notice of tip credit, or gaming licenses, including, but not limited to, those brought under the FLSA.  The Released Federal Claims include interest and liquidated or punitive damages based on said claims, and are intended to include all claims described or identified herein through the date of Preliminary Approval.  The Releases defined in Paragraphs 36 and 37 do not apply to any rights or claims that may arise after the date of Preliminary Approval; nor shall any provision in this Agreement be interpreted to waive or extinguish any benefit, rights, claims, or causes of action which may not be infringed, limited, waived, released or extinguished by private agreement and/or as a result of any law, statute, or ordinance, including, but not limited to, (a) Class Members' and Collective Members' rights to file a charge with the Equal Employment Opportunity Commission ("EEOC") or any similar state or local agency and to participate in an administrative investigation or proceeding conducted by the EEOC or any such agency, or (b) ERISA claims that cannot be released by law or agreement.

38.    **"Released Parties."** "Released Parties" means Defendant and its present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

39.    **"Reserve Fund."** "Reserve Fund" means a fund in the amount of $5,000, allocated from the Maximum Settlement Fund, that the Settlement Administrator may use, with approval from Defendant, to make payments to Class Employees and Collective Employees who dispute their Settlement Check allocation amounts, to individuals who were not identified as Class Employees or Collective Employees but have a good faith claim for participation in this settlement, or for any other reasonable purpose necessary to effectuate the settlement.

40.    **"Rule 23 Settlement Checks."** "Rule 23 Settlement Checks" means the checks issued to Class Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement in exchange for becoming bound by the Released State Claims portion of the Judgment if the Effective Date occurs.

41.    **"Service Payment."** "Service Payment" means the amount approved by the Court to be paid to Named Plaintiff as described in Paragraph 54, in addition to any Settlement Check she receives as a Class Member and Collective Member, in recognition of her efforts in coming forward as the Named Plaintiff, assisting in the prosecution of the Litigation, or otherwise benefiting the Settlement Class and Settlement Collective.

42.     **"Settlement Administrator."** "Settlement Administrator" refers to Analytics Consulting LLC, the settlement administrator selected by the Parties.

43.     **"Settlement Administration Costs."** "Settlement Administration Costs" means the fees and costs incurred by the Settlement Administrator in administering the settlement as described in this Agreement, not to exceed $25,917.

44.     **"Settlement Checks."** "Settlement Checks" means the combined group of "Rule 23 Settlement Checks" and "FLSA Settlement Checks."

45.     **"Tip Credit Class."** "Tip Credit Class" means any current or former hourly employees of Defendant who, from April 30, 2017 through April 1, 2020, received a base hourly wage (not including tips) that was less than the then-applicable Maryland minimum wage.

46.     **"Tip Credit Collective."** "Tip Credit Collective" means any current or former hourly employees of Defendant who, from April 30, 2017 through April 1, 2020, received a base hourly wage (not including tips) that was less than $7.25 per hour.

## CERTIFICATION OF THE CLASS AND COLLECTIVE
## <u>FOR PURPOSES OF SETTLEMENT ONLY</u>

47.     These stipulations are made solely for purposes of this Agreement. The Parties agree that the stipulations and the terms of this Agreement are in no way an admission that class or collective action certification, including conditional collective action certification, would be proper in this Litigation, and neither the existence nor the terms of this Agreement or the stipulations will be admissible in this or any other action or proceeding as evidence that (i) a determination or admission that any group of similarly situated employees exists to maintain a class action under Rule 23 of the Federal Rules of Civil Procedure (or comparable state laws or rules) or collective action under the FLSA; (ii) an adjudication of the merits of the Litigation; (iii) Defendant is liable to Named Plaintiff, Class Employees, Collective Employees, the Settlement

Class, or the Settlement Collective; or (iv) an adjudication of any other matters released in this Agreement.

## PAYMENTS, SETTLEMENT FUND, AND ALLOCATION

48. The total amount of money available to be paid to Class Members and Collective Members under the settlement is estimated to be $1,936,957.73. The Net Settlement Amount shall be allocated as follows: 60% to the Tip Credit Class, 33% to the Tip Credit Collective, 5% to the Gaming License Class, and 2% to the Gaming License Collective. This allocation approximates the proportional damages attributable to each group and each claim. Each Class Member and Collective Member's estimated share of the Net Settlement Amount will be calculated by the Settlement Administrator as follows:

a. Each Tip Credit Class member's estimated share of the Tip Credit Class payment shall be calculated *pro rata* by comparing the number of hours that the Tip Credit Class member worked between April 30, 2017 and April 1, 2020 while earning a base hourly wage (not including tips) that was less than the then-applicable Maryland minimum wage against the total amount of such hours that all Tip Credit Class members worked between April 30, 2017 and April 1, 2020.

b. Each Tip Credit Collective member's estimated share of the Tip Credit Collective payment shall be calculated *pro rata* by comparing the number of hours that the Tip Credit Collective member worked between April 30, 2017 and April 1, 2020 while earning a base hourly wage (not including tips) that was less than $7.25 per hour against the total amount of such hours that all Tip Credit Collective members worked between April 30, 2017 and April 1, 2020.

c. Each Gaming License Class member's estimated share of the Gaming License Class payment shall be calculated *pro rata* by comparing the amount of money that the

Gaming License Class member had deducted from his or her pay for obtaining or renewing Gaming Licenses between April 30, 2017 and March 18, 2021, against the total amount of money that all Gaming License Class members had deducted from their pay for fees associated with a Gaming License between April 30, 2017 and March 18, 2021.

       d.     Each Gaming License Collective member's estimated share of the Gaming License Collective payment shall be calculated *pro rata* by comparing the amount of money that the Gaming License Collective member had deducted from his or her pay for obtaining or renewing Gaming Licenses between April 30, 2017 and March 18, 2021, against the total amount of money that all Gaming License Collective members had deducted from their pay for fees associated with a Gaming License between April 30, 2017 and March 18, 2021.

       49.     Class Employees may elect to "opt out" of the Settlement Class and thus exclude themselves from the Litigation, the Settlement, and the Settlement Class. Class Employees who wish to exercise this option must complete, execute, and mail, per the instructions therein, the form entitled "Election to Opt Out of Settlement and Class Action Form" attached hereto as Form A of Exhibit A. If a completed and executed Opt Out form is not received by the Settlement Administrator from a Class Employee and postmarked on or before the Opt Out Response Deadline, then that Class Employee will be deemed to (a) have forever waived his or her right to opt out of the Settlement Class; (b) have become a member of the Settlement Class; and (c) have forever released the Released State Claims against the Released Parties.

       50.     Class Employees who submit a completed and executed Opt Out form shall have no further role in the Litigation, and for all purposes shall be regarded as if they never were either a party to this Litigation or a Class Member, and thus they shall not be entitled to any benefit as a

result of the Litigation, this Agreement and the settlement that it evidences, nor will they have released any claims they may have against the Released Parties.

51.     Class Employees who do not opt out of the Settlement Class pursuant to Paragraph 49, i.e., Class Members, may object to the Agreement by submitting written objections to the Court and mailing copies of their written objection so that they are received by the Settlement Administrator and are postmarked no later than the Opt Out Response Deadline. Any objections must be timely submitted as required in this Paragraph or else they will be waived. The Proposed Settlement Notice shall advise Class Members of this option. The Settlement Administrator shall immediately provide copies of any such objections to Class Counsel and Counsel for Defendant.

52.     Collective Employees who negotiate their FLSA Settlement Check on or before the Participation Deadline will become Participating Collective Members and shall be deemed to have waived the Released Federal Claims against the Released Parties. Collective Employees who do not timely negotiate their FLSA Settlement Checks will not be deemed to have waived the Released Federal Claims against the Released Parties. Consistent with the law, however, the statute of limitations for an FLSA claim continues to run until a person affirmatively opts-in to, or files, an FLSA action.

53.     Only Collective Employees who negotiate their FLSA Settlement Checks on or before the Participation Deadline shall be entitled to payment pursuant to the settlement and this Agreement.

## SERVICE PAYMENT TO NAMED PLAINTIFF

54.     The Service Payment to Named Plaintiff shall not exceed the total amount of $7,500.  The Service Payment is being sought in recognition of Named Plaintiff's efforts to pursue

the claims raised in this Litigation on behalf of the Settlement Class and Settlement Collective, including assisting Class Counsel with the prosecution of this Litigation.

55.    Defendant will not oppose Named Plaintiff's request for the Service Payment. In the event that the Court does not approve the amount of the Service Payment to Named Plaintiff, the settlement will proceed. This Agreement is not contingent upon the Court's approval of the request for the Service Payment in any amount. This Agreement will be modified to reflect any amount that is approved by the Court. Any amounts allocated as the Service Payment for Named Plaintiff under this Agreement, but not approved by the Court, shall be added to the Net Settlement Amount.

## PAYMENT OF ATTORNEYS' FEES AND COSTS

56.    Class Counsel will apply to the Court for approval of attorneys' fees not to exceed thirty-five percent (35%) of the Maximum Settlement Fund, or $1,067,500, and costs in the amount of $7,125.27. Defendant will not oppose such application.  In the event that the Court does not approve the amount of the requested attorneys' fees or costs, the settlement will proceed. This Agreement is not contingent upon the Court's approval of the requested attorneys' fees or costs in any amount and will be modified to reflect the amount(s) approved by the Court. Any amounts allocated as attorney's fees or costs under this Agreement, but not approved by the Court, shall be added to the Net Settlement Amount.

## RELEASE

57.    Upon the Effective Date and after Defendant has paid the Maximum Settlement Fund to the Qualified Settlement Fund ("QSF") pursuant to Paragraph 69, Named Plaintiff and each of the Class Members, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall

have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Claims as defined in Paragraph 36 herein.

58.     Further, upon the date(s) that Collective Members negotiate their FLSA Settlement Checks, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Claims as defined in Paragraph 37 herein.

## THE SETTLEMENT PROCESS

59.     As soon as practicable and without undue delay, Plaintiff will seek the Court's Preliminary Approval of the terms of this Agreement and, upon Final Approval, to seek the Court's dismissal of the Litigation with prejudice, on the condition that the Court retain jurisdiction to administer and enforce the terms of this Agreement, to the extent allowed by law.  Defendant will not oppose either motion.

60.     The Parties shall provide to the Court for review and approval this Agreement, with exhibits, including (a) the proposed Preliminary Approval Order in substantially the form attached as Exhibit C; (b) the Notice Materials, attached as Exhibits A and B; and such other information as the Court may request.

61.     The Parties shall cooperate and take all necessary steps to effectuate judicial approval of the Agreement. Should the Court not approve the Agreement, the Parties will retain all rights and defenses in the Litigation, and all negotiations and information and materials pertaining in any way to this Agreement or the settlement of the Litigation will be inadmissible. In such an event, the Parties agree in good faith to negotiate about appropriate revisions and re-submit for the Court's approval. In the event this settlement is never approved by the Court, the

Parties will retain all rights and defenses in the Litigation, and all negotiations and information and materials pertaining in any way to this Agreement or the settlement of the Litigation will be inadmissible.

62.     Within ten (10) days following the filing of this Agreement with the Court, Defendant shall serve upon the Office of the Comptroller of the Currency of the United States and the appropriate State official of each State in which any Class Member resides, as determined by Defendant's records, a notice of the proposed settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). A sample of the CAFA Notice is attached to this Agreement as Exhibit D.

63.     At least thirty (30) days after the Opt Out Response Deadline the Court shall set the Final Settlement Approval Hearing. Prior to the Final Settlement Approval Hearing, Named Plaintiff will move the Court for entry of the Final Approval Order and the associated Judgment. The Parties shall make all reasonable efforts to secure entry of the Final Approval Order and the associated Judgment. If the Court rejects their request or fails to enter the Judgment, this Agreement shall be void *ab initio*, and Defendant shall have no obligation to make any payments under the Agreement, except for costs already incurred by the Settlement Administrator, which shall be borne equally by, on one hand, Class Counsel and Named Plaintiff, and Defendant, on the other. At the time the motion is filed requesting Final Approval, Named Plaintiff and Class Counsel also shall make an application for attorneys' fees and costs and the Service Payment. Notwithstanding any order entered on Named Plaintiff's and Class Counsel's application for awards to them, under no circumstance shall Defendant be required to pay any such awards absent occurrence of the Effective Date.

## SETTLEMENT ADMINISTRATION

64.     If the Court grants Preliminary Approval of this Agreement, the settlement will be administered by the Settlement Administrator. Reasonable fees and expenses of the Settlement Administrator shall be paid from Maximum Settlement Fund.

65.     In no circumstances will any administration of the settlement, including issuance of the Notice Materials, occur unless and until the Court grants Preliminary Approval as set forth in Paragraph 59.  The Parties agree to the following procedure for administration of the settlement:

a.     Within fourteen (14) days of Preliminary Approval, Defendant shall provide the names and addresses ("Contact Information") and payroll or other data needed for purposes of allocating the Net Settlement Amount ("Payroll Information") of Class Employees and Collective Employees to the Settlement Administrator and Class Counsel.  Any and all information, including Social Security Numbers, provided by Defendant to Class Counsel shall be held in confidence and shall be used solely for purposes of effectuating this Agreement.

b.     Upon receipt of the Contact Information, the Settlement Administrator shall make reasonable efforts to obtain valid, current addresses for Class Employees and Collective Employees, including validating Contact Information through the national change of address database or other third-party change of address databases prior to sending the Notice Materials and thereafter as needed.

c.     Upon receipt of the Payroll Information, the Settlement Administrator shall calculate the amount of the Rule 23 Settlement Checks for each Class Employee and the amount of the FLSA Settlement Checks for each Collective Employee in accordance with Paragraph 48.

66.     Within fourteen (14) days of receiving the Contact Information and the Payroll Information, the Settlement Administrator shall issue the Proposed Settlement Notice, as approved by the Court, in substantially the form attached hereto and made a part of this Settlement

Agreement as Exhibit A to all Class Employees and Collective Employees. The Proposed Settlement Notice shall inform Class Employees and/or Collective Employees of their right to opt-out of the settlement, object to the settlement, or participate in the settlement, and the approximate amount they are entitled to receive if they participate. If the Proposed Settlement Notice sent to a Class Employees and Collective Employees is returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps including performing a skip trace to determine the Class Employee or Collective Employee's current address and, if an additional address is located, to send the Proposed Settlement Notice to the additional address.

67.    Class Employees shall have a deadline of forty five (45) days from the date the Proposed Settlement Notice is first mailed to opt out of the settlement by fully executing and returning the form entitled "Election to Opt Out of Settlement and Class Action Form" attached hereto as Form A of Exhibit A ("Opt Out Response Deadline"). If the Settlement Notice sent to an Class Employee is returned as undeliverable, but the Settlement Administrator locates an additional address for the Class Employee and thereafter sends the Proposed Settlement Notice to that additional address, then that Class Employee shall have a deadline of the earlier of thirty (30) days from the date the Proposed Settlement Notice was mailed to the additional address to opt out of the settlement or seventy five (75) days from date the Settlement Administrator first mailed the Proposed Settlement Notice to Class Employees. Opt Out Forms must be returned via U.S. First Class Mail and be postmarked by the Opt Out Response Deadline, which shall be specified in the Proposed Settlement Notice, to be timely.

68.    If the Court grants Preliminary Approval of this Agreement, the Settlement Administrator shall establish a QSF pursuant to 26 C.F.R. § 1.468B-1 for the purposes of administering the Settlement on or before the Effective Date. The Parties shall provide the

Settlement Administrator with all necessary cooperation for the creation of the QSF, including but not limited to the execution of all necessary documents.

69.     Defendant shall fund the QSF with the Maximum Settlement Fund within fourteen (14) days of the Effective Date.

70.     To effectuate the terms of the Settlement and to correct for mathematical or factual errors in the allocations to Class Members and Collective Members, the Settlement Administrator shall allocate from the Maximum Settlement Fund $5,000.00 to create a Reserve Fund, which the Settlement Administrator may use, with approval from Defendant and Class Counsel, to make payments to Class Members or Collective Members who dispute their allocation amounts, to individuals who were not identified as Class Employees or Collective Employees but have a good faith claim for participation in the settlement, or for any other reasonable purpose necessary to effectuate the settlement.

## ISSUANCE OF THE PAYMENTS UNDER THIS SETTLEMENT

71.     Within fourteen (14) days of the date Defendant funds the QSF with the Maximum Settlement Fund, the Settlement Administrator shall issue (i) the Rule 23 Settlement Checks and FLSA Settlement Checks allocated from the Net Settlement Fund in accordance with Paragraph 48, along with the Final Settlement Notice, in substantially the form attached hereto and made a part of this Settlement Agreement as Exhibit B, to Class Members and Collective Members; (ii) a check or wire transfer (at Class Counsel's option) in the amount of any Court-approved attorneys' fees and costs to Class Counsel; and (iii) a check in the amount of any Court-approved Service Payment payable to Named Plaintiff to be delivered to Class Counsel.

72.     Both the Rule 23 Settlement Checks and FLSA Settlement Checks shall be valid and negotiable for a period of one hundred and twenty (120) days from issuance.  Any Settlement

Checks that are not cashed or deposited within one hundred and twenty (120) days from issuance shall become void.

73.     At the end of the one hundred and twenty (120) day period from the date the Settlement Checks were mailed, Named Plaintiff and the Class Members shall remain bound by this Agreement and the Final Order Approving Settlement, notwithstanding any failure to cash or deposit any Rule 23 Settlement Check issued pursuant to this Paragraph.

74.     Any portion of the Net Settlement Amount that is not claimed by Collective Members because those individuals did not timely negotiate their FLSA Settlement Checks, or any portion of the Reserve Fund that is not allocated by the Settlement Administrator to Class Members or Collective Members, shall return to Defendant.  The Settlement Administrator shall effectuate the distribution of the money described in this Paragraph no later than thirty (30) days after the Participation Deadline.

75.     Any portion of the Net Settlement Amount that is not claimed by Class Members because those individuals did not timely negotiate their Rule 23 Settlement Checks will escheat to the State of Maryland's unclaimed property fund to be held by the State of Maryland for the benefit of the Class Member.

76.     For tax purposes, 50% of each Settlement Check shall be treated as back wages, and the other 50% of each Settlement Check shall be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief.

77.     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and other appropriate taxing authorities (together with the IRS, the "Taxing Authorities") and the payee

under the payee's name and Social Security number on an IRS Form W-2.  The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Class Member and Collective Member, and shall come out of the Net Settlement Amount. However, payments treated as back wages shall not be made net of any Employer Payroll Taxes, which shall be paid by Defendant independent of and in addition to the Maximum Settlement Fund.  The Settlement Administrator shall promptly notify Defense Counsel of the total amount of Employer Payroll Taxes owed, and Defendant shall remit that amount to the Settlement Administrator within thirty (30) days.  The Settlement Administrator shall then remit the Employer Payroll Taxes to the appropriate Taxing Authorities.

78.    Payments treated as interest and/or liquidated damages shall be made without withholding and shall be reported to the Taxing Authorities and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099.

79.    The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, and issuing IRS Forms W-2 and Forms 1099 as appropriate.

80.    Within seven (7) calendar days following Final Approval, Class Counsel shall provide the Settlement Administrator with a duly completed IRS Form W-9. The payments provided by Paragraph 56 shall be considered attorneys' fees and reported on behalf of Class Counsel to the Taxing Authorities on a Form 1099 issued to Class Counsel by the Settlement Administrator, provided the Settlement Administrator has timely received a duly completed Form W-9 from Class Counsel.

81.     The Service Payment paid to Named Plaintiff under this Agreement shall be reported as non-wage income to the Taxing Authorities on a Form 1099 issued to Named Plaintiff by the Settlement Administrator.

82.     Defendant is responsible for the Employer Payroll Taxes arising from the payments under this Agreement. In the event that it is determined by the Taxing Authorities that Class Counsel, Named Plaintiff and/or any Class Member or Collective Member owes any additional taxes with respect to any attorneys' fees or costs, any Service Payment, or any Settlement Check distributed under this Agreement, it is expressly agreed that the determination of any tax liability is between Class Counsel, Named Plaintiff, Class Members, and/or Collective Members and the Taxing Authorities, and that Defendant will not be responsible for the payment of such taxes, including any interest and penalties.

83.     Class Counsel, Counsel for Defendant, and Defendant make no representations, and it is understood and Named Plaintiff agrees on behalf of Class Members and Collective Members, that Class Counsel, Counsel for Defendant, and Defendant have made no representations, as to the taxability of any portions of the Settlement Check to Named Plaintiff or any Class Member or Collective Member, the payment of any costs or award of attorneys' fees to Class Counsel, or any Service Payment to Named Plaintiff. The Notice Materials will advise Class Employees and Collective Employees to seek their own tax advice prior to acting in response to the Notices. Neither Class Counsel nor Counsel for Defendant intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

84.     The Settlement Administrator shall provide periodic updates to Class Counsel and Counsel for Defendant regarding Class Employee opt outs, Class Member objections, and Settlement Check negotiation rates.

85.     The Settlement Administrator shall keep a log of all communications with any Class Employees and Collective Employees, and shall be responsible for responding to inquiries about the settlement. In the event any Class Employee or Collective Employee requests to speak to Class Counsel or has a question that seeks legal advice about the settlement, the Settlement Administrator shall provide that person with Class Counsel's contact information, including telephone number, email address, and mailing address. The Settlement Administrator shall forward all other unresolved questions or issues in writing to Class Counsel and Counsel for Defendant, who will work jointly to attempt to provide a resolution.

86.     In communications to Class Employees, the Settlement Administrator and the Parties will cooperate to facilitate the purposes of the settlement. Any communication between Class Counsel and a Class Employee or Collective Employee shall not discuss any other Class Employee or Collective Employee's decision to participate (or not to participate) in this Settlement or allocation of money thereunder.

87.     Within seven (7) days of the Opt Out Response Deadline for all Class Employees, the Settlement Administrator shall provide Defendant and Class Counsel with a list of the names and addresses of all Class Employees (a) who have opted out of the settlement; (b) who do not opt out of the settlement; and (c) the final allocations of amounts to be distributed to each of the Class Members. Once the final allocations have been calculated, payments to each Class Member will be in accordance with those allocations.

## **NON-ADMISSION OF LIABILITY**

88.     This Agreement shall not in any way be construed as an admission by Defendant that it has acted wrongfully with respect to Named Plaintiff, Class Employees, Collective Employees, or to any other person, collectively or individually, and Defendant specifically disclaims any liability to or wrongful acts against Named Plaintiff, Class Employees, Collective Employees, or any other person, on the part of Defendant or the Released Parties. Furthermore, the Parties agree that this Agreement does not constitute an adjudication of the merits of the Litigation or any other matters released in this Agreement. Accordingly, the Parties agree that none of them has prevailed on the merits; nor shall this Agreement serve or be construed as evidence that (1) any party has so prevailed; (2) Defendant or the Released Parties have engaged in any wrongdoing; or (3) any claims may or should proceed on a class or collective action basis against Defendant or the Released Parties. Nothing in this provision shall prevent the Parties from bringing an action to enforce the terms of this Agreement.

<strong><u>RELEASE OF FEES AND COSTS</u></strong>

89.     Named Plaintiff and Class Counsel understand and agree that any fee payments made under Paragraph 56 of this Agreement will be the full, final, and complete payment by Defendant of all attorneys' fees and costs arising from or relating to the representation of Named Plaintiff, the Class Members and Collective Members or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of the Litigation against Defendant. As an inducement to Defendant to enter into this Agreement, and as a material condition thereof, Named Plaintiff and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against the Released Parties for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Paragraph. As a further inducement to Defendant to enter into this Agreement, and as a material

condition thereof, Named Plaintiff and Class Counsel further understand and agree that the fee and cost payments made pursuant to Paragraph 56 of this Agreement will be the full, final, and complete payment of all attorneys' fees and costs that are released, acquitted, or discharged under this Paragraph. As further inducement to Defendant to enter into this Agreement, and as a material condition thereof, Named Plaintiff and Class Counsel warrant and represent that they will not, nor will any of their employees, agents, or representatives of their firms, file any claims for attorneys' fees or costs against the Released Parties, including, but not limited to, bills of costs or requests for attorneys' fees, arising out of the Litigation, and Named Plaintiff and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge the Released Parties of any liability for such fees and/or costs.  Furthermore, Named Plaintiff and Class Counsel represent and warrant that they are not aware of any attorney, other than Class Counsel, who has any attorney's fee lien on or claim to any proceeds arising out of, by virtue of, or in connection with the Litigation, and that the terms of this Agreement shall fully satisfy any and all claims by any attorney arising out of or by virtue of or in connection with the Litigation.

## LIMITED CONFIDENTIALITY

90.     The Parties and their counsel agree not to respond to any press inquiries concerning the settlement or issue or cause to be issued any press releases to the media or press regarding the settlement.

## COURT RETAINS JURISDICTION TO ENFORCE AGREEMENT

91.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement. This retention of jurisdiction encompasses any disagreement among

the Parties concerning the final forms of the Notices or other documents necessary to implement this Agreement, and all other disputes regarding the Agreement and its implementation. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

## GOVERNING LAW

92.     This Agreement is made and entered into in the State of Maryland and shall in all respects be interpreted, enforced, and governed by and under the laws of the State of Maryland.

## COOPERATION CLAUSE

93.     The Parties agree to cooperate to effectuate the settlement of the Litigation, including securing the Court's approval of the Agreement, assisting with the administration of the settlement in accordance with the terms of this Agreement, and obtaining a final dismissal. The Parties further agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the terms and conditions of the Agreement, including but not limited to obtaining the dismissal, transfer to the Court, or stay of any pending or subsequently-filed class or collective action lawsuit that alleges any of the claims covered by the Releases herein.

## ASSIGNMENTS

94.     Named Plaintiff and Class Counsel represent that they have not assigned or transferred, or purported to assign or transfer, to any person or entity any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

## NO REPRESENTATIONS FROM DEFENDANT

95.     Named Plaintiff represents and acknowledges that, in executing this Agreement, she does not rely and has not relied upon any representation or statement made by Defendant or

by any of its agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement.

## BINDING AGREEMENT

96.    This Agreement shall be binding upon the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of Defendant and to their respective heirs, administrators, representatives, executors, successors, and assigns.

## ARM'S LENGTH TRANSACTION; MATERIALITY OF TERMS

97.    The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

## SEVERABILITY

98.    Should any clause, sentence, provision, Paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, Paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

## WAIVERS, ETC. TO BE IN WRITING

99.    No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's Preliminary or Final Approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to

the extent set forth in such written waiver, modification, or amendment subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

## CAPTIONS

100.    The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

## CONSTRUCTION

101.    The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

## SOLE AND ENTIRE AGREEMENT

102.    This Agreement, including any exhibits attached hereto, sets forth the entire agreement between the Parties hereto. This Agreement fully supersedes any and all prior oral or written agreements or understandings between the Parties hereto pertaining to the subject matter hereof.  This Agreement may only be modified in a writing signed by all Parties.

## EXTENSIONS OF TIME

103.    If any deadlines related to this Agreement cannot be met, Class Counsel and Counsel for Defendant shall meet and confer to reach agreement on any necessary revisions of the

deadlines and timetables set forth in this Agreement. In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

### FACSIMILE/ELECTRONIC SIGNATURES

104.    Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

### THIRD PARTY BENEFICIARIES

105.    The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third party beneficiaries other than third parties that are identified as Released Parties as defined in Paragraph 38.

### COUNTERPARTS

106.    This Agreement may be executed in two or more counterparts, each of which counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

**NAMED PLAINTIFF:**

DATED: _____June 2_____, 2021          By: _____
                                                    Laura A. Day

**DEFENDANT:**

DATED: _____, 2021          By: _____
                                                    On Behalf of PPE Casino Resorts Maryland,
                                                    LLC d/b/a Live! Casino & Hotel